**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| MARIA CASTELLANOS,<br><br>    Plaintiff,<br><br>v.<br><br>COUNTRYWIDE BANK NA, et al.,<br><br>    Defendants. | Case No.  15-cv-00896-BLF<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER**<br><br>[Re:  ECF 2] |

Plaintiff Maria Castellanos, represented in this litigation by counsel, brings suit against Defendant alleging several causes of action, including violations of the Fair Debt Collection Practices Act ("FDCPA") and Rosenthal Act, as well as for wrongful foreclosure and quiet title. ECF 1. Before the Court is Plaintiff's *Ex Parte* Motion for an Emergency Temporary Restraining Order ("TRO Application") requiring Defendant to cancel a foreclosure sale of her property presently scheduled for Monday, March 2, 2015 at 1:30 p.m. *See* TRO App. at p. 2. Based on Plaintiff's application and supporting materials, the Court GRANTS her TRO Application.

**I.  BACKGROUND**

Plaintiff filed this action today, February 27, 2015. She asserts that in 2006 she engaged in a transaction with Countrywide Bank, N.A., in which she refinanced her debt on real property located at 23 Meghan Court in Watsonville, California. Compl. ¶ 21. She claims that Countrywide was not the source of funds for the transaction, and "denies any loan or debt being owed to any party, specifically the Defendants." Compl. ¶ 22. On July 18, 2014, Plaintiff sent Defendants Select Portfolio Servicing ("SPS") and National Default Servicing Corp. ("NDSC") a Notice of Dispute, pursuant to 15 U.S.C. § 1692g, to which SPS responded by serving Plaintiff with a dunning notice. Compl. ¶¶ 24-25. Plaintiff further alleges that an Assignment of Deed of Trust,

1   dated May 11, 2011, was filed in the Santa Cruz County Recorder's Office, stating that the Deed
2   of Trust and Promissory Note were assigned from Mortgage Electronic Registration Systems, Inc.
3   to Bank of New York Mellon. Compl. ¶ 26. Plaintiff alleges this document to be false and
4   fraudulent. *Id.*

5   Plaintiff also filed her *ex parte* TRO Application today, February 27, 2015. Plaintiff states
6   that she had been informed that any foreclosure sale of her property had been put on hold "while
7   the parties were discussing possible solutions." TRO App. at ¶ 1. Defendants had previously
8   continued the sale dates for foreclosure sales of the property for thirty to forty-five days as the
9   parties have attempted to resolve their dispute, but on Wednesday, February 25, 2015, Plaintiff
10  contacted NDSC and was informed that a sale date had been set for March 2, 2015, and that the
11  sale "would be going forward unless restrained by Court order." TRO App. at ¶¶ 2, 3.

12  Plaintiff seeks a TRO that would "immediately cancel the currently scheduled foreclosure
13  sale . . .until the Court can consider Plaintiff['s] Complaint," and direct Defendants to "appear and
14  show cause . . . that this Court should not issue a preliminary injunction against all further
15  foreclosure activity by defendant's (sic) . . . until the Court rules on the merits of the relief
16  requested in the Complaint." TRO App. at p. 2.

17  **II.  LEGAL STANDARD**

18  The substantive standard for issuing a temporary restraining order is identical to the
19  standard for issuing a preliminary injunction. *See Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush*
20  *& Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001); *Lockheed Missile & Space Co. v. Hughes Aircraft*,
21  887 F. Supp. 1320, 1323 (N.D. Cal. 1995).  An injunction is a matter of equitable discretion and is
22  "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is
23  entitled to such relief." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008).

24  A plaintiff seeking preliminary injunctive relief must establish "[1] that he is likely to
25  succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary
26  relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public
27  interest." *Id.* at 20.  Alternatively, an injunction can issue where "the likelihood of success is such
28  that serious questions going to the merits were raised and the balance of hardships tips sharply in

plaintiff's favor," provided that the plaintiff can also demonstrate the other *Winter* factors. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011) (citation and internal quotation marks omitted). Under either standard, the plaintiff bears the burden of making a clear showing on these elements and on entitlement to this extraordinary remedy. *Earth Island Inst. v. Carlton*, 626 F.3d 462, 469 (9th Cir. 2010).

**III. DISCUSSION**

An *ex parte* TRO Application must first satisfy Federal Rule of Civil Procedure 65(b)(1), which demands that the opposing party or parties have been given notice. Plaintiff's TRO Application avers that her counsel contacted Defendants' attorneys on February 26, 2015 to give notice that she would be seeking a TRO. *See* TRO App. at ¶ 5. The Court therefore considers whether Plaintiff has made a sufficient showing pursuant to the four *Winter* factors.

**A.  Likelihood of Irreparable Injury**

Courts have repeatedly concluded that the loss of one's home is sufficient to satisfy the element of irreparable injury. *See, e.g.*, *Vazquez v. Select Portfolio Serv'g*, 2013 WL 5401888, at *2 (N.D. Cal. Sept. 26, 2013); *Tamburri v. Suntrust Mortg., Inc.*, 2011 WL 2654093, at *2 (N.D. Cal. July 6, 2011). Here, if the foreclosure sale is successful, Plaintiff could lose her property, originally purchased in 2003.[1] This loss is more than sufficient to show a likelihood of irreparable injury.

**B.  Balance of Hardships**

The balance of hardships tips decisively to Plaintiff. As the court noted in *Tamburri*, "it is hard to conceive of a serious hardship to Defendants [were a TRO to issue] . . . because any security they have in the real property would still remain," provided the security is valid. *Tamburri*, 2011 WL 2654093, at *2. In contrast, were the foreclosure sale to go forward following the Court's denial of the TRO Application, Plaintiff could lose her property. Such a balance between the interests of the homeowner and the party seeking to foreclose augurs strongly in favor of the homeowner. *See Vazquez*, 2013 WL 5401888, at *2; *see also Cottrell*, 632 F.3d at 1131.

---

[1] Plaintiff does not specifically plead or allege that the property is her residence, merely that she is the owner of the property. *See* Compl. ¶ 2; Castellanos Decl. ¶ 2.

3

### C. Likelihood of Success on the Merits

Plaintiff does not in either declaration provide the Court reasons why she is likely to prevail were this suit to be tried. *See, e.g.*, Maines Decl., ECF 2-2. However, Plaintiff has alleged that Defendants are not legally entitled to foreclose in the subject property. *See, e.g.*, Compl. at ¶ 26. Under the standard outlined in *Cottrell*, at least one court in this district has found with regard to a similar wrongful foreclosure TRO application that "[g]iven that the balance of hardships tips sharply in Plaintiff's favor, Plaintiff need only show that there are serious questions going to the merits in order to obtain a temporary restraining order." *Vazquez*, 2013 WL 5401888, at *3. Plaintiff has done so.

### D. Public Interest

"[I]t is in the public interest to allow homeowners an opportunity to pursue what appear to be valid claims before being displaced from their homes." *Sencion v. Saxon Mortg. Servs., LLC*, 2011 WL 1364007, at *1 (N.D. Cal. Apr. 11, 2011). Plaintiff has met this fourth *Winter* factor.

## IV. ORDER

Plaintiff has established three of the four *Winter* factors, and given how heavily the balance of hardships tip in her favor, has shown that there are serious questions going to the merits such that the fourth *Winter* factor, likelihood of success on the merits, is also established. *See Cottrell*, 632 F.3d at 1131. The Court hereby GRANTS Plaintiff's *ex parte* TRO Application, and orders as follows:

1. Plaintiff shall **immediately** serve her Application and Order upon Defendants, and file a certificate of service thereafter. This Order **shall have no effect unless** Plaintiff files a certificate of service **by 10 a.m. on March 2, 2015**.

2. The Court HEREBY PROHIBITS Defendants from proceeding with the sale of 23 Meghan Court, Watsonville, CA 95076, currently scheduled to take place at 701 Ocean Street, Santa Cruz, CA on March 2, 2015 at 1:30 p.m., until further order by the Court.

3. The Court finds, pursuant to Rule 65(c), that there is no likelihood that Defendants will be wrongfully enjoined or restrained by the issuance of this TRO, and therefore does not require Plaintiff to give security.

4

1    4.     To provide Defendants adequate time to prepare a response to Plaintiff's TRO
2 Application, and so the Court has adequate time to review that response, the Court finds pursuant
3 to Rule 65(b)(2) that good cause exists to extend the expiration date of this Order to **Thursday,**
4 **March 12, 2015**, at the time of the conclusions of the hearing on this order.

5    5.     Defendants are HEREBY ORDERED TO SHOW CAUSE in writing why a
6 preliminary injunction should not issue, no later than March 9, 2015. The Court will hold a
7 hearing on this Order to Show Cause **on Thursday, March 12, 2015 at 9:00 a.m.**, in Courtroom
8 3, 5th Floor, 280 South 1st St., San Jose, CA 95113.

   **IT IS SO ORDERED.**

10 Dated: February 27, 2015



EDWARD J. DAVILA
United States District Judge