UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MARIA CASTELLANOS,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>COUNTRYWIDE BANK NA, et al.,<br><br>　　　　　　Defendants. | Case No. 15-cv-00896-BLF<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**<br><br>[Re: ECF 2] |

This suit arises out of a dispute over a mortgage transaction between Plaintiff and Defendant Countrywide Bank, N.A. Plaintiff brings suit alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), California's Rosenthal Act and Civil Code § 2943, and claims for wrongful foreclosure and quiet title. Before the Court is Plaintiff's motion for a preliminary injunction, seeking to enjoin Defendants from foreclosing on the real property secured by the challenged mortgage transaction. *See* ECF 2. This is not the first court action Plaintiff has filed to attempt to stave off foreclosure on this property: Plaintiff has now three times, on the eve of foreclosure, sought redress from a court to prevent Defendants from non-judicially foreclosing on the property. Defendants oppose the motion, contending that Plaintiff cannot show a likelihood of success on the merits. They also contend that Plaintiff is forum shopping, and that the Court should deny her preliminary injunction because this suit is an improper vehicle to seek redress on a case that has already been before a state court. For the reasons provided below, the Court agrees with Defendants, and DENIES Plaintiff's motion for a preliminary injunction.

**I.　BACKGROUND**

　　**A.　Factual Background**

Plaintiff states that in 2006 she engaged in a transaction with Countrywide Bank, N.A., in

which she refinanced her debt on real property located in Watsonville, California. Compl. ¶ 21. She claims that Countrywide was "not the source of funds involved in the consumer transaction," and "denies any loan and or debt being owed to any party." Compl. ¶ 22. On July 18, 2014, Plaintiff sent Defendants Select Portfolio Services ("SPS") and National Default Servicing Corp. ("NDSC") a notice of dispute pursuant to 15 U.S.C. § 1692g, disputing the alleged debt and notifying the Defendants of her belief that their prior communication with her violated the FDCPA and other consumer protection statutes. *See* Compl. Exh. A. at 1-2. SPS responded by serving Plaintiff with a dunning notice. Compl. ¶ 25, Exh. B. Plaintiff further alleges that the assignment of the deed of trust, filed in the Santa Cruz County Recorder's Office, was false and fraudulent. Compl. ¶ 26.

Plaintiff argues that between July and September 2006, the promissory note that evidenced her indebtedness to Countrywide was sold to a Real Estate Mortgage Investment Conduit ("REMIC") called the CWALT 2006-OA17 REMIC Trust ("CWALT Trust"). TRO App. ¶ 4. She contends, however, that the deed of trust was not transferred to the CWALT Trust along with the note. *Id.* at ¶ 5. She further argues that Mortgage Electronic Registration Systems, Inc. ("MERS") stated in May 5, 2011 that it was the holder of the deed of trust, *id.* at ¶ 15, and contends that the note and deed were separated, rendering the deed "of no force and effect." *Id.* at ¶ 16. She continues: "Once the debt instrument and security instrument were separated . . . the deed of trust including the power of sale incorporated therein became unenforceable." *Id.* at ¶ 18. She also contends that any assignment by MERS of the deed of trust and promissory note was invalid, and that any transfer of the rights from MERS to another entity, Bank of New York Mellon, constituted "the transfer of a debt in default." TRO App. ¶¶ 19-22.[1]

Plaintiff's Complaint alleges that the CWALT Trust is subject to the terms of a Pooling

---

[1] The TRO application and Complaint both include a recitation of various transfers between entities that Plaintiff contends occurred. Specifically, she states that MERS assigned its rights to Bank of New York Mellon, as Trustee of the CWALT Trust, and that Mellon thereafter transferred the "servicing rights" to SPS. TRO App. ¶ 19. Confusingly, Plaintiff then goes on to state that SPS "allegedly acquired servicing rights from *Bank of America* effective December 1, 2011." TRO App. ¶ 23 (emphasis added). Neither the Complaint nor TRO Application is clear in alleging the chain of wrongful transfers that Plaintiff contends gives rise to her FDCPA or Rosenthal Act claims.

and Servicing Agreement ("PSA"), Compl. ¶ 27, and that Bank of New York Mellon, the trustee of the CWALT Trust, "does not have the power or authority under the terms of the PSA to declare any note which is the property of the trust to be in default, to modify said note, or to commence a foreclosure of any promissory note or deed of trust held by the trust." Compl. ¶ 28.

Finally, she argues that Defendants are debt collectors, as defined by the FDCPA and Rosenthal Act, and that under both statutes a debt collector cannot non-judicially foreclose on a property in order to satisfy a debt, thus rendering any attempt by SPS or NDSC to foreclose on her property a violation of both statutes. TRO App. at ¶¶ 24-25.

### B. Procedural History

This is not the first legal action Plaintiff has brought with regard to this particular debt, though Plaintiff made no mention of her prior legal actions in her Complaint or TRO Application filed with this Court.

After two Notices of Default and a Notice of Trustee's Sale were recorded against the Property, *see* ECF 15-1 Exhs. 4-5, 7, Plaintiff filed a Chapter 7 bankruptcy petition on August 6, 2014, *see id*. Exh. 8 the date for which the Trustee's Sale was noticed. *Id.* Exh. 7 at 1. That action was dismissed on August 21, 2014 for failure to file required documents. *Id.* Exh. 9.[2]

On August 4, 2014, Plaintiff filed a state court action against Defendants in Santa Cruz Superior Court. Defendants demurred, and Plaintiff filed an amended complaint on November 17, 2014. That same day, Plaintiff filed an ex parte application for a temporary restraining order to stay the foreclosure sale of the property. ECF 16 Exh. 12. The TRO was granted, but following briefing as to why a preliminary injunction should not issue, the state court dissolved the TRO and denied Plaintiff's motion for a preliminary injunction on December 29, 2014. ECF 16 Exh. 13. Plaintiff dismissed the state court action on February 23, 2015.[3]

---

[2] Defendants requested the Court take judicial notice of these (and other) documents in relation to their motion to dismiss the Complaint. *See* ECF 15. Because these documents are "matters of public record," judicial notice is appropriate. *See Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001).

[3] At oral argument, Plaintiff's counsel stated that he felt the suit was improperly filed in state court, and should have been filed in federal district court with an FDCPA cause of action. But Plaintiff was the party who controlled the forum in which suit was filed, and nothing prevented

1    This third action followed a mere four days later: Plaintiff filed her Complaint and TRO application on February 27, 2015. ECF 1, 2. In her TRO application, Plaintiff stated that on February 25, 2015, she had contacted NDSC to inquire about a continuation date for the pending foreclosure sale, but was "informed that the sale date of March 2, 2015 would be going forward unless restrained by Court Order." TRO App. ¶ 32. She noted that the foreclosure sale "was on hold while the parties were discussing possible solutions," and that NDSC had "voluntarily continued the previous set date" of the foreclosure sale. *Id.* ¶¶ 30, 31. Plaintiff made no mention of the fact that the state court had denied her motion for a preliminary injunction two days prior to her contacting NDSC. Without this information, and knowing only that the foreclosure sale was scheduled for the following Monday morning, the Court granted Plaintiff's TRO application, and prohibited the sale of the property from going forward as scheduled. *See* ECF 6 at 4.

The Court scheduled an Order to Show Cause hearing for March 12, 2015 to determine whether a preliminary injunction should issue. The parties stipulated to continue the hearing date until April 23, 2015, and to maintain the terms of the Court's TRO until that date. *See* ECF 10 at 3. At the hearing, Defendants' counsel agreed to maintain the TRO until the Court issued a written order.

## II.   LEGAL STANDARD

A preliminary injunction is a matter of equitable discretion and is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008). A preliminary injunction "is not a preliminary adjudication on the merits but rather a device for preserving the status quo and preventing the irreparable loss of rights before judgment." *Sierra On–Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984). As such, the basic function of a preliminary injunction is "to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981).

---

Plaintiff from instead filing a suit in federal court that included an FDCPA cause of action. Plaintiff's counsel provides no persuasive reason why the Court should ignore Plaintiff's choice to file her action in state court, let alone to amend that complaint following a demurrer, when considering whether Plaintiff engaged in forum shopping.

4

The party seeking preliminary injunctive relief must establish "(1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest." *Winter*, 555 U.S. at 20. Alternatively, an injunction can issue where "the likelihood of success is such that serious questions going to the merits were raised and the balance of hardships tips sharply in [the moving party's] favor," provided that the movant can also demonstrate the other *Winter* factors. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011) (citation and internal quotation marks omitted). Showing "serious questions going to the merits" requires more than establishing that "success is more likely than not;" rather, it requires a moving party to demonstrate a "substantial case for relief on the merits." *Leiva–Perez v. Holder*, 640 F.3d 962, 967 (9th Cir. 2011).

## III. DISCUSSION

The Court looks to each of the four *Winter* factors to determine whether Plaintiff has met her moving burden. Plaintiff must establish all four elements in order for the Court to issue an injunction. *See, e.g.*, *Cottrell* at 1131. The Court finds for the reasons below that Plaintiff fails to establish three of the four elements, any one of which would render a preliminary injunction inappropriate.

### A. Likelihood of Success on the Merits

In determining whether Plaintiff has made out a substantial case for relief on the merits, the Court engages in a claim-by-claim analysis of the causes of action brought in her Complaint.[4]

#### 1. The FDCPA and Rosenthal Act Claims

Plaintiff's first and third causes of action contend that Defendants have violated the FDCPA and Rosenthal Act in several ways. First, she argues that "Defendants have alleged erroneous amounts due and owing . . . [and] threat[ened] action that cannot be legally taken (non-judicial foreclosure)." Compl. ¶ 35. Second, she argues that Defendants have engaged in harassing

---

[4] Plaintiff also includes in her Complaint a stand-alone cause of action for injunctive relief as her sixth cause of action. But injunctive relief is a remedy, not a claim. *See McDowell v. Watson*, 59 Cal. App. 4th 1155, 1159 (1997).

5

behavior in connection with debt collection. Compl. ¶ 38. Third, she contends that Defendants engaged in false or misleading representations with regard to collection of her debt. Compl. ¶¶ 39, 49. Fourth, she contends that SPS has furnished deceptive documentation to her regarding the assignment of the deed of trust. Compl. ¶ 41. Defendants argue that they are not debt collectors for purposes of the statutes and that the statutes do not apply to foreclosure activities. Defs.' Opp. at 7. They further argue that neither statute provides for injunctive relief on claims such as these. *Id.* at 7-8.

Defendants' last argument regarding the relief Plaintiff can receive under the FDCPA and Rosenthal Act is ultimately its most persuasive. Both statutes permit an individual to recover statutory damages of up to $1,000, along with actual damages. *See* 15 U.S.C. § 1692k(a)(1)-(2). Neither statute permits injunctive relief. *See, e.g.*, *Palmer v. Stassinos*, 233 F.R.D. 546, 548 (N.D. Cal. 2006). Even were Plaintiff to prevail under either statute, neither cause of action supports a request for injunctive relief. Plaintiff has provided no authority to support her contention that she is entitled to a preliminary injunction on these claims where her remedy, were she to succeed, would be limited to a monetary award alone.

### 2. The Wrongful Foreclosure Claim

Plaintiff's second cause of action for wrongful foreclosure alleges that the notice of default was inadequate under California Civil Code §§ 2924 *et seq.* and that Defendants are debt collectors as defined by the FDCPA, which bars them from taking non-judicial action to foreclose on her home. Compl. ¶¶ 43-45.

Defendants make several arguments in response. First, they argue that, to the extent Plaintiff bases her claim on her theory of defective securitization of the subject loan, she does not have standing to make those claims because she is not a party to or third-party beneficiary of the assignment or CWALT Trust pooling and servicing agreement. *See* Opp. at 10. Second, they argue that a party is not required under California law to produce the promissory note, prove it holds the note, or prove chain of ownership in order to non-judicially foreclose. *See id.* at 11.

First, Plaintiff's defective notice of default argument is unpersuasive. A review of the notice of default shows that it identifies the nature of the alleged default and provides Plaintiff

6

1  with instructions on how to cure this default. ECF 15-1 Exh. 5 at 1-2 (noting the amount past due
2  and providing Plaintiff with steps to cure). Further, contrary to Plaintiff's assertion, the statute
3  does not require the notice to identify the lender, but only the current "beneficiary or mortgagee."
4  Cal. Civ. Code §2924c(b)(1). Because Plaintiff's Complaint does not identify the manner in which
5  this notice is allegedly defective, she has not shown a likelihood of success on the merits.

6        Second, Defendants are correct that Plaintiff lacks standing to challenge the ability of the
7  Trustee to foreclose based on the CWALT Trust's pooling and servicing agreement. Plaintiff's
8  argument challenging the validity of a foreclosure relies on several steps: (1) that the promissory
9  note was invalidly assigned from MERS to Bank of New York Mellon (as Trustee to the CWALT
10  Trust), (2) that the deed of trust did not follow the note into the CWALT Trust, (3) that Mellon, as
11  Trustee, does not have the authority to declare the note to be in default or commence a foreclosure,
12  and therefore that (4) SPS cannot non-judicially foreclose on her home. *See* Compl. ¶¶ 25-30. A
13  2012 case in this district, *Almutarreb v. Bank of New York Trust Co.*, considered a similar
14  argument to the one Plaintiff makes here. 2012 WL 4371410, at *1 (N.D. Cal. Sept. 24, 2012)
15  ("The gravamen of Plaintiff's complaint is that Defendants failed to comply with the terms of the
16  Pooling Servicing Agreement for the trust into which Plaintiffs' note was transferred."). The Court
17  roundly rejected the plaintiffs' claim that "Defendants lack standing or authority to exercise any
18  claim to the deed of trust or property at issue . . . by foreclosing on the property." *Id.* at *1, *2
19  ("Plaintiffs' argument has been *soundly rejected* by courts that have addressed similar
20  arguments.") (emphasis added). Because the plaintiffs in *Almutarreb* were not parties to the
21  pooling agreement, they lacked standing to challenge "the validity of the securitization process."
22  *Id.* at *1. Plaintiff's argument here suffers the same fate. Though Plaintiff claims in her Reply that
23  she "is not suing to enforce the Pooling and Servicing Agreement," Reply, ECF 20 at 8, her claim
24  against Mellon's ability to foreclose on the property relies on her challenge to its authority under
25  the PSA. Plaintiff seems to recognize this, framing her argument thusly: "The simple question is,
26  have the parties complied with their *contractual duties* in order to obtain the rights to act *under the*
27  *security documents*." *Id.* at 9 (emphasis added). Defendants' challenge to Plaintiff's standing to
28  assert her theory renders her unlikely to succeed on the merits of this claim.

7

1    Plaintiff's argument regarding FDCPA § 1692f is somewhat more plausible, but ultimately unavailing. She contends that Defendants are debt collectors within the terms of the statute, and that debt collectors are barred from non-judicially foreclosing on a home in order to collect a debt. This allegation relies on her claim that the assignment of the note occurred after she was already in default. She points to a payoff statement sent by SPS on October 22, 2014, which states that her payment due date was April 1, 2009, as evidence that she was already in default on the mortgage at the time the assignment occurred in 2011. *See* Compl. Exh. B at 1.

This Circuit has adopted a "case-by-case approach to determining when a debt is in default." *Natividad v. Wells Fargo Bank, N.A.*, 2013 WL 22996021, at 4 (N.D. Cal. May 24, 2013) (citing *De Dios v. Int'l Realty & Inves.*, 641 F.3d 1071, 1074 (9th Cir. 2011)). At oral argument, counsel for Defendants contended that the date the assignment was recorded is not necessarily the date the assignment was made, and that Plaintiff has not sufficiently alleged that the debt was assigned to Defendant after it was in default. While Plaintiff may have a colorable claim that the transfer occurred after default, *see Natividad* at *3 ("[M]ere overdue payments may constitute a debt that is in default."), her claim is unlikely to succeed on the merits because "courts within this Circuit have concluded that a non-judicial foreclosure *does not constitute 'debt collection' as defined by the [FDCPA]*." *Garcia v. Am. Home Mortg. Serv., Inc.*, 2011 WL 6141047, at *4 (N.D. Cal. Dec. 9, 2011) (compiling cases) (emphasis added); *see also Tang v. Calif. Reconveyance Co.*, 2010 WL 5387837, at *4 (N.D. Cal. Dec. 22, 2010) ("[T]o the extent [plaintiffs'] FDCPA claims are based on the initiation of a foreclosure proceeding, Plaintiffs fail to state a claim.").[5]

### 3. The Payoff Demand Claim

Plaintiff's fourth cause of action contends that Defendants failed to provide her with a payoff demand statement as required by California Civil Code § 2943. She alleges that she served Defendants with a Request for Beneficiary Statement and that Defendants did not provide her with a payoff statement within 21 days. Section 2943 does not require a payoff statement be provided,

---

[5] Plaintiff argues in reply that because she has shown "serious questions" on this issue and that, because the balance of the equities tip in her favor, the Court should grant her motion. *Cf. Cottrell* at 1131. But because the Court finds below that the balance of hardships tips in favor of Defendants, Plaintiff cannot meet *Cottrell's* lower "serious question" standard.

8

however, "if the loan is subject to a recorded notice of default . . . unless the written demand is received prior to the first publication of a notice of sale." Cal. Civ. Code § 2943(c). In this case, a notice of sale was recorded on July 15, 2014. *See* ECF 15-1 Exh. 7. Nowhere in Plaintiff's Complaint or TRO application does she state that she sent a Request for Beneficiary Statement prior to July 15, 2014. *See* Compl. ¶¶ 51-55. In fact, her Complaint states that her Request is attached to her Complaint as "Exhibit F," but no such exhibit is attached to the Complaint. Plaintiff therefore has not shown a likelihood of success as to the fourth cause of action.

### 4. The Quiet Title Claim

Plaintiff's fifth cause of action seeks to quiet title. In California, a Plaintiff cannot quiet title "without discharging his debt. The cloud upon his title persists until the debt is paid." *Aguilar v. Bocci*, 39 Cal. App. 3d 475, 477 (1974). Plaintiff's Complaint and TRO application include no offer to tender *any* amount owed on the subject loan. Plaintiff cannot ignore this obligation because she herself pleads that she entered into a transaction with Countrywide. *See* Compl. ¶ 21. A mere cursory pleading that Countrywide "was not the source of the funds involved in the consumer transaction," and her denial of "any loan and or debt being owed to any party" is not sufficient to exempt Plaintiff from the tender requirement. *See* Compl. ¶ 22; *see also Lona v. Citibank, N.A.*, 202 Cal. App. 4th 89, 112-16 (2011) (finding that a plaintiff's challenge to the underlying loans as violative of public policy fell within an exception to the tender requirement). Plaintiff has therefore shown no likelihood of success on the merits as to the fifth cause of action.

Plaintiff has failed to show a likelihood of success on the merits as to any of her causes of action. As such, she has not met the first required element for a preliminary injunction. This alone is sufficient to deny her request for a preliminary injunction. *See Winter* at 20.

### B. Likelihood of irreparable injury

Plaintiff's TRO application states that if the foreclosure sale proceeds "she will lose her home." *See* ECF 2-3 at ¶ 26. Courts in this district have held that the loss of one's home is "generally considered sufficient to satisfy this element." *Vazquez v. Select Portfolio Serv.*, 2013 WL 5401888, at *2 (N.D. Cal. Sept. 26, 2013). Though Defendants argue that "the loss of a property is the outcome of every foreclosure sale," Defs.' Opp. at 13, this does not render the

9

injury any less severe. Plaintiff has therefore satisfied this element.

### C. Balance of hardships

Plaintiff argues that "any harm to defendant (sic) should not be considered." TRO App. ¶ 27. This is simply not true: the Court must consider and balance the harms facing both Plaintiff and Defendants when considering this third *Winter* element. *See, e.g.*, *Tamburri v. Suntrust Mortg., Inc.*, 2011 WL 2654093, at *2 (N.D. Cal. July 6, 2011).

Plaintiff will undoubtedly suffer harm if a foreclosure sale goes forward and she loses her home. *See Vazquez* at *2. Courts have noted that defendants seeking to foreclose on a home generally face far lesser hardship than the plaintiffs on whom they are foreclosing, because "defendants will only experience a temporary delay in earning income from their investment." *See Tamburri* at *3. Two factors here, however, tip the scales away from Plaintiff and toward Defendants in this balance of hardships inquiry. The first is the length of time for which Defendants allege Plaintiff has failed to pay her mortgage, now over six years, which has caused Defendants financial harm. The second, and more important, factor is the extent to which Plaintiff has engaged in forum shopping this dispute. Plaintiff sought Chapter 7 bankruptcy on August 6, 2014, the day a foreclosure sale was scheduled, and then failed to file necessary paperwork several days later, resulting in its dismissal. Plaintiff then sought relief in state court, obtained a TRO on markedly similar facts and legal theories, and, following briefing and a hearing, was denied a preliminary injunction on December 29, 2014. She then dismissed the state court action on February 23, 2015. Two days after that dismissal, Defendants informed Plaintiff that they would proceed with a foreclosure sale. Within two days of that notification Plaintiff filed for a TRO in this Court, but failed to apprise the Court of *any* of these prior court actions.

In *Johnston v. Citimortgage, Inc.*, a court in this district was faced with a similar situation: debtors sought to block a non-judicial foreclosure first through bankruptcy, then through a state court action. Neither was successful. Then, a mere four days before the scheduled foreclosure sale, they filed a TRO application in federal court. The court found that they engaged in forum shopping, and stated that "[u]nder these circumstances . . . any emergency caused by the pendency of the foreclosure sale is of the Johnstons' own making." 2011 WL 941282, at *3 (N.D. Cal. Mar.

10

18, 2011). The court in *Johnston* denied the TRO request, finding that the balance of the equities did not tip in favor of Plaintiff. This Court finds the same to be true in this case.

The Court here finds that the six-year delay in payment on the loan, coupled with the forum shopping in which Plaintiff has engaged, tips the balance of hardships to Defendants. Plaintiff has therefore failed to make a sufficient showing for this element.

### D. Public interest

Courts in this district have found that "[i]t is in the public interest to allow homeowners an opportunity to pursue what appear to be valid claims before being displaced from their homes." *Sencion v. Saxon Mortg. Servs., LLC*, 2011 WL 1364007, at *1 (N.D. Cal. Apr. 11, 2011). In this case, although Plaintiff will be able to pursue the claims in her Complaint, she will not be afforded the protection of a preliminary injunction because she has failed to show a likelihood of success on the merits, and has improperly engaged in forum shopping.

## IV. ORDER

For the foregoing reasons, Plaintiff's motion for a preliminary injunction is DENIED, and the Temporary Restraining Order is HEREBY DISSOLVED.

**IT IS SO ORDERED.**

Dated: April 27, 2015

_____
BETH LABSON FREEMAN
United States District Judge

11